2009 UT 12

**Craig Duncan NICHOLLS, Petitioner,**

v.

**STATE of Utah, Respondent.**

No. 20080022.

Supreme Court of Utah.

Feb. 13, 2009.

---

Craig Duncan Nicholls, Salt Lake City, petitioner pro se.

Mark L. Shurtleff, Att'y Gen., Kris C. Leonard, Brett J. Delporto, Asst. Atty's Gen., Salt Lake City, for respondent.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Petitioner, Craig Nicholls, claims that the district court erred in dismissing his Post–Conviction Remedies Act ("PCRA") petition. He presents two arguments: (1) due to mental illness, his plea was not knowing and voluntary, and (2) he received ineffective

assistance of counsel. We affirm the district court's dismissal.

## BACKGROUND

¶ 2 After consulting with his girlfriend, Tamara Rhinehart, Nicholls agreed to kill Rhinehart's ex-husband, Michael John Boudrero.[1] In July 2003, Nicholls called Boudrero and asked him to come to a construction site to help with a plumbing job. At the same time, Rhinehart was planning to attend a movie with her children to provide an alibi for Nicholls, who planned to show up late for the movie after he killed Boudrero.

¶ 3 Between 8 and 9 p.m., Boudrero arrived at the construction site, and Nicholls led him to the basement. Nicholls then shot Boudrero in the back and chest, dragged him into a storage room, stole property from him, locked the body in the storage room, and escaped in Boudrero's car.

¶ 4 Investigators quickly focused on Nicholls and Rhinehart as suspects. Nicholls used a prepaid phone card to call Boudrero to set up the meeting; the phone card was traced to Nicholls through video surveillance showing him purchasing the card at a Wal–Mart in Brigham City. Investigators also received tips from confidential informants who said that Rhinehart had told them about a plan that "was going to happen soon," by which she meant her ex-husband "was going to be gone." Rhinehart also told an informant that her boyfriend was going to kill Boudrero.

¶ 5 Nicholls was charged with one count of aggravated homicide, a capital felony, and one count of purchasing, transferring, possessing, or using a firearm by a restricted person, a third degree felony. The State initially sought the death penalty.

¶ 6 Nicholls agreed to plead guilty to one count of aggravated murder in exchange for dismissal of the second charge and a recommendation by the State that he be sentenced to life in prison without the possibility of parole. Nicholls engaged in a colloquy with the court, and the court accepted his plea.

Nicholls waived the time for sentencing, and the court sentenced him to life in prison without the possibility of parole.

¶ 7 A few weeks later, Nicholls filed a pro se motion to withdraw his plea. In a memorandum decision, the trial court determined that it lacked jurisdiction to consider the motion because it was filed after imposition of the sentence, making it untimely. Within a month, Nicholls filed a pro se notice of appeal from the denial of the motion to withdraw his plea, but the appeal was dismissed when a docketing statement was not filed.

¶ 8 Nine months later, Nicholls filed a motion in the district court, pursuant to Utah Rule of Criminal Procedure 22(e), to correct an illegal sentence and arrest judgment. The district court again dismissed for lack of jurisdiction. Nicholls filed a timely notice of appeal to this court from the district court's jurisdictional ruling, but we dismissed, noting that because he missed the deadline for moving to withdraw his plea, Nicholls could challenge his guilty plea only through the PCRA.[2]

¶ 9 Nicholls then filed a petition pursuant to the PCRA. The State filed a motion to dismiss and a supporting legal memorandum. The post-conviction court granted the State's motion to dismiss and later issued findings of fact, conclusions of law, and an order dismissing the petition. Nicholls timely appealed.

¶ 10 On appeal, Nicholls claims the district court erred in dismissing his PCRA petition. He argues that (1) due to mental illness, his plea was not knowing and voluntary, and (2) he received ineffective assistance of counsel. We affirm the district court's dismissal of Nicholls's petition.

¶ 11 We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(i) (2008).

## STANDARD OF REVIEW

¶ 12 " 'We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without

---

1. Nicholls admitted his guilt during the plea hearing held on November 10, 2003.

2. *State v. Nicholls*, 2006 UT 76, ¶¶ 6–7, 148 P.3d 990.

deference to the lower court's conclusions of law.' "[3]

## ANALYSIS

¶ 13 The PCRA provides "the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies."[4] The specifically enumerated grounds for relief include that "the conviction was obtained or the sentence was imposed in violation of the United States Constitution or Utah Constitution," and that "the petitioner had ineffective assistance of counsel."[5]

¶ 14 Nicholls claims that the district court erred in dismissing his PCRA petition because his plea was not knowing and voluntary, thus violating the United States Constitution, and that he received ineffective assistance of counsel. We will review each of Nicholls's claims.[6]

### I. NICHOLLS FAILED TO DEMON-STRATE THAT HIS PLEA WAS NOT KNOWING AND VOLUNTARY

 ¶ 15 Nicholls first argues that prior to and during his plea hearing, he was "suffering from a mental illness," and as a result, his "plea was ... not ... voluntary and knowing." Under the PCRA, "[t]he petitioner has the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."[7] In an attempt to satisfy this burden, Nicholls points to affidavits by Dr. Daniel Spencer and Dr. William Weber.

¶ 16 In his affidavit dated January 11, 2006, Dr. Spencer stated that in August 2003, he received a request from Cache County Jail to visit Nicholls after Nicholls had been moved to OBS3 (suicide watch). On August 22, 2003, Dr. Spencer performed a mental health clinical assessment of Nicholls and diagnosed him with "depressive disorder ... clinical disorders, with adjusted disorder with mixed anxiety and depression...." He rated Nicholls 48 on the Global Assessment of Functioning scale ("GAF"), "suggesting a serious impairment in functioning with serious symptoms." However, in his notes dated August 29, 2003, Dr. Spencer wrote that Nicholls "denied having suicidal plans or intent," and is "ok to move [into the general population] at this time."

¶ 17 A month later, on September 26, 2003, Dr. Spencer again visited Nicholls. As to this visit, Dr. Spencer's affidavit recounts that Nicholls was "suffering from increased tension, depressed feelings, ... increased thoughts of death, ... and chest pain." In his notes, also dated September 26, 2003, Dr. Spencer wrote that Nicholls "is not planning on suicide," is at "moderate," but not imminent risk "of self harm," and "doesn't necessarily need observation at this point."

¶ 18 Dr. Weber did not examine or meet with Nicholls. His affidavit, dated January 9, 2006, merely states that he is "familiar with the Global Assessment of Functioning scale" and opined that a

> score between 40 and 50 indicates serious symptoms, such as suicidal ideation, and constitutes ... a significant compromise in mental functioning. People who have a functioning GAF score between 40 and 50 are not competent to independently make major, life-impacting decisions, especially without appropriate stabilizing medications to assist them in their thought and logic process.

¶ 19 Nicholls claims that the affidavits of Dr. Spencer and Dr. Weber establish that his "plea was ... not ... voluntary and knowing because of [his] impaired state...."

 ¶ 20 A "guilty plea is not valid under the Due Process Clause of the United

---

3. *Rudolph v. Galetka*, 2002 UT 7, ¶ 4, 43 P.3d 467.

4. Utah Code Ann. § 78B–9–102(1) (2008).

5. *Id.* § 78B–9–104(1)(a), (d).

6. The State argues that we should dismiss Nicholls's claims because they are inadequately briefed. A pro se litigant is "entitled to every consideration that may reasonably be indulged." *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (internal quotation marks omitted). While the State points out deficiencies in Nicholls's brief, the brief does provide an adequate basis for our review.

7. Utah Code Ann. § 78B–9–105(1) (2008).

States Constitution unless it is knowing and voluntary." [8] A knowing and voluntary plea is one that has a factual basis for the plea and ensures that the defendant understands and waives his constitutional right against self-incrimination, the right to a jury trial, and the right to confront witnesses.[9] A prerequisite to entering a knowing and voluntary plea is that the defendant must be mentally competent to enter it.[10] A defendant is not mentally competent

if he is suffering from a mental disorder or mental retardation resulting either in:

(1) his inability to have a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged; or

(2) his inability to consult with his counsel and to participate in the proceedings against him with a reasonable degree of rational understanding.[11]

¶ 21 Thus, we have held that "[i]n determining whether a defendant is competent to plead guilty, the trial court must consider whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." [12]

■■■■ ¶ 22 A trial court is not, however, required to order a competency hearing unless defense counsel, the prosecutor, or the custodian of a defendant files a petition alleging incompetence.[13] In the absence of a petition, "[a] trial court must hold a competency hearing when there is a substantial question of possible doubt as to a defendant's competency at the time of the guilty plea." [14] "In determining whether the lower court should have ordered a competency hearing, we consider only those facts that were before the [trial] court when the plea was entered." [15]

¶ 23 The question here is whether, based on the facts that were before the trial court when Nicholls entered his guilty plea, there was a substantial question of doubt as to Nicholls's competence. Our review of the record leads us to conclude that the answer is no.

¶ 24 Before the plea hearing formally began, the judge asked Nicholls, "are you under the influence of any drugs, medication or alcohol?" Nicholls responded, "[n]o, sir." The judge then asked, "[a]re you confident that you are in complete control of your mental faculties and are able to proceed today?" Nicholls responded, "[y]es, sir." George Daines, the county attorney, then explained that he was "going to walk through the notice [of plea bargain and Rule 11 waiver statement] for the purpose of making sure that [Nicholls] understands each part of [it]...."

¶ 25 The county attorney then read each charge and each waiver of rights, paragraph by paragraph, and asked Nicholls if he understood. In each instance, Nicholls responded, "[y]es, sir." The county attorney also read Nicholls's first-person narrative of the plot and murder of Boudrero and asked

---

8. *Bluemel v. State*, 2007 UT 90, ¶ 17, 173 P.3d 842 (citations omitted); *see also Boykin v. Alabama*, 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) *superseded by statute*, Fed. R.Crim.P. 11(c) (holding that the Due Process Clause requires that waiver "be an intentional relinquishment or abandonment of a known right or privilege" (internal quotation marks omitted)).

9. *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709.

10. *See State v. Arguelles*, 2003 UT 1, ¶ 47, 63 P.3d 731 ("It is well established that due process requires that a defendant be mentally competent to plead guilty and to stand trial."); *see also* Utah Code Ann. § 77–15–1 (2008) ("No person who is incompetent to proceed shall be tried for a public offense.").

11. Utah Code Ann. § 77–15–2 (2008).

12. *State v. Holland*, 921 P.2d 430, 433 (Utah 1996) (internal quotation marks omitted); *see also State v. Lafferty*, 2001 UT 19, ¶ 51, 20 P.3d 342 ("[C]ompetency is established when a defendant can, but not necessarily will, assist or consult with counsel." (internal quotation marks omitted)).

13. *See State v. Bailey*, 712 P.2d 281, 285 (Utah 1985).

14. *Jacobs v. State*, 2001 UT 17, ¶ 13, 20 P.3d 382 (internal quotation marks omitted).

15. *Arguelles*, 2003 UT 1, ¶ 50, 63 P.3d 731 (alteration in original) (internal quotation marks omitted).

Nicholls if the description was accurate. After each paragraph, Nicholls responded, "[y]es, sir," or, "[t]hat's correct."

¶ 26 The county attorney then asked Nicholls to confirm the following statements:

Q. My decision to enter this plea was made after full and careful thought, with the advice of counsel and with a full understanding of my rights and the facts and circumstances of the case and the consequences of the plea. I was not under the influence of any drugs, medication or intoxicants when the decision to enter the plea was made and I am not now under the influence of any drugs, medication or intoxicants.

A. Yes, sir.

Q. I have no mental reservations concerning this plea.

A. Yes, sir.

¶ 27 The court then asked, "Mr. Nicholls, ... [d]o you believe that you are making this plea intelligently, knowingly, voluntarily and intentionally?" Nicholls responded, "[y]es, sir." Nicholls then entered his guilty plea, waived the sentencing period, and was sentenced to life in prison without the possibility of parole.

¶ 28 Nothing in the plea colloquy suggested that Nicholls was incompetent. He participated in the hearing by giving precise, appropriate answers at appropriate times. While Nicholls argues that the affidavits submitted by Dr. Spencer and Dr. Weber demonstrate that he was incompetent to make "major life impacting decisions," we review the trial court's determination of a defendant's competence based on the facts that were before the court when the plea was entered.[16] The facts before the trial court did not include Dr. Spencer's diagnosis of Nicholls, nor did they include Dr. Weber's opinion regarding Nicholls's GAF score. In fact, the affidavits of Dr. Spencer and Dr. Weber are dated January 2006. Nicholls's plea hearing occurred in November 2003. Additionally, Nicholls responded positively to the court's question, "[a]re you confident that you are in complete control of your mental faculties and are able to proceed today?" Nicholls was given numerous opportunities to alert the court that he was not competent to enter the plea and never did so. Nevertheless, Nicholls insists that the trial court should have ordered, sua sponte, a competency hearing before accepting his plea.

¶ 29 In *Arguelles,* we reviewed the record of a trial court to determine whether the trial court should have moved, sua sponte, for a competency hearing of the defendant. We held that the court did not err in failing to raise the question of a defendant's competence because the defendant was "coherent," "responded to questions appropriately," and "repeatedly affirmed" his choice to plead guilty.[17] We also noted that the defendant

indicated by words and actions that he understood the proceedings, and he fully participated in the hearings.... The record shows that [the defendant] exhibited no mental defects at the hearings, that he understood the proceedings, answered the questions posed, and participated in the hearings. Neither standby counsel nor the State expressed any concern over [the defendant's] competence to proceed, nor does the record contain any indication that he was not competent.[18]

¶ 30 Similarly, Nicholls indicated by words and actions that he understood the proceedings and the rights he was waiving, and there is nothing in the record to suggest that Nicholls exhibited any mental defect or inappropriate behavior that should have alerted the court to his possible incompetence. As noted, during the plea hearing, Nicholls answered the court's questions precisely and appropriately. He worked with his attorney prior to the hearing to revise his plea statement to reflect a more accurate depiction of the events. He agreed that the narrative was read correctly and agreed, after each paragraph, that the content was accurate. Thus, the trial court had no reason to suspect, based on the facts that were before the court, that Nicholls was not competent to enter his guilty plea.

16. *Id.*

17. *Id.* ¶ 53.

18. *Id.*

¶ 31 Additionally, while the affidavits submitted by Dr. Spencer and Dr. Weber indicate that Nicholls was likely depressed, depression and anxiety are normal responses to the stressful circumstances attending a criminal prosecution and possible death sentence.[19] "[A]nyone faced with the choice of going to trial for capital murder or pleading guilty and receiving life without the possibility of parole likely would be depressed and upset." [20] Depression is not sufficient, however, to establish incompetence where the definition of a competent defendant is one who "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." [21] Here, there was nothing at the plea hearing to suggest that Nicholls's depression was so severe that he was unable to rationally consult with his lawyer or that he failed to have a rational understanding of the proceedings against him.

¶ 32 Nicholls consulted with his attorney prior to the plea hearing and demonstrated at the plea hearing that he understood the content of the hearing. When the county attorney asked: "I hereby acknowledge and certify that I . . . understand the following facts and rights and *that I've had the assistance of counsel* in reviewing, explaining, and completing" the appropriate plea forms, Nicholls responded, "[y]es sir." (Emphasis added.) Nicholls also worked with his attorney to draft and revise his narrative of the crime to ensure its accuracy. When asked whether he "discussed this case and the plea with my attorneys as much as I wish to [and] . . . have no further questions of my lawyer prior to the court taking my plea," Nicholls responded, "[y]es, sir." When asked if he understood the proceedings against him and each of the constitutional rights he was waiving, in each instance, Nicholls responded, "[y]es, sir." Nicholls's actions and answers demonstrate that he had the ability to rationally consult with his lawyer and that he understood the proceedings against him.

¶ 33 Therefore, despite the depression Nicholls may have been experiencing at the time of the plea hearing, the record does not demonstrate, and Nicholls has not proven by a preponderance of the evidence, that his plea was not knowing and voluntary due to mental illness.

## II. NICHOLLS HAS FAILED TO DEMONSTRATE THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 34 Nicholls next argues that he is entitled to relief under the PCRA because he received ineffective assistance of counsel.

¶ 35 Nicholls claims that on the day of the plea hearing, "I told [counsel] I wanted a trial." In response, Nicholls claims that his counsel "refused to consult with me or even acknowledge that I had any input. . . ." Nicholls claims that his counsel spent two hours making "threats, demands, and bribes" to force Nicholls to accept the plea deal, and, eventually, Nicholls "could no longer resist" and capitulated to the plea. Nicholls also claims that the behavior of his counsel included "not accepting phone calls [from Nicholls], not accepting responsibility for clients [sic] interest[s], not investigating, [and] not keeping [Nicholls] informed" about his case. Thus, Nicholls claims, his counsel was ineffective.

¶ 36 Petitioner "bears the burden of establishing that his trial counsel was ineffective. . . ." [22] To prevail on a claim of ineffective assistance of counsel, petitioner must satisfy the two-prong test established in

---

**19.** The State points out that Dr. Spencer's and Dr. Weber's affidavits "pertain to petitioner's condition three months before the [plea] Hearing and say nothing about his state of mind at the time he entered his plea." Additionally, Nicholls's GAF score of 48 was interpreted by Dr. Weber, who never spoke with Nicholls. Given that Nicholls behaved and responded appropriately during the plea hearing, the GAF score does not establish incompetence for purposes of our review.

**20.** *State v. Benvenuto,* 1999 UT 60, ¶ 16, 983 P.2d 556.

**21.** *Holland,* 921 P.2d at 433 (internal quotation marks omitted).

**22.** *State v. Litherland,* 2000 UT 76, ¶ 8, 12 P.3d 92.

*Strickland v. Washington.*[23] "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense."[24] Additionally, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality."[25] Given our limited role of review, "demonstrable reality" must be born out by the record. Because we are not fact-finders and do not investigate factual allegations, when a defendant raises an ineffective assistance claim for the first time on appeal, we will review the claim only "if the . . . record is adequate to permit decision of the issue. . . ."[26] Here, the record lacks evidence sufficient to support Nicholls's ineffective assistance of counsel claim.

¶ 37 To satisfy the first prong of *Strickland,* Nicholls must show that his "counsel's representation fell below an objective standard of reasonableness."[27] "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[28] Nicholls has pointed to no record evidence that suggests his counsel's representation was not objectively reasonable. Nicholls was facing the death penalty. His counsel advised him to accept a plea offer that spared him a possible death sentence. Though Nicholls claims that his counsel put *"very, very,* little time" into the case and consulted with him only twice for a total of thirty minutes prior to the plea hearing, such allegations are not supported by the record. Even assuming support in the record, however, these allegations are not sufficient to satisfy the first prong of *Strickland.*

¶ 38 We have refused to hold that counsel is ineffective based on the amount of time counsel spent working on the case or consulting with a client: "We decline to determine what amount of time counsel must spend with a defendant to ensure that the representation does not fall below an objective standard of reasonableness. Clearly, the time period will vary with every case."[29] Here, Nicholls's counsel spent sufficient time on his case to ensure an accurate narrative of the crime was read into the record at the plea hearing and to ensure that Nicholls's plea spared him a possible death sentence. Given the absence of any record evidence to the contrary, Nicholls has not shown that his counsel's representation fell below an objective standard of reasonableness.

¶ 39 Additionally, we note that during the plea colloquy, Nicholls was asked specifically about the quality of legal counsel he received. The following exchange demonstrates that Nicholls expressed satisfaction with his counsel, agreed that he had not been threatened or bribed, and, when given the opportunity, Nicholls did not make any assertion to the contrary.

Q. No threats or promises of any sort have been made to me to induce me or to persuade me to enter this plea.

A. Yes, sir.

. . . .

Q. I have discussed this case and the plea with my attorneys as much as I wish to. I have no further questions of my lawyer prior to the court taking my plea. Is that correct?

A. Yes, sir.

Q. I am satisfied with my lawyer's counsel and advice.

A. Yes, sir.

Q. . . . My decision to enter this plea was made after full and careful thought, with the advice of counsel and with a full understanding of my rights. . . .

A. Yes, sir.

---

23. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

24. *Id.* at 687, 104 S.Ct. 2052.

25. *Fernandez v. Cook,* 870 P.2d 870, 877 (Utah 1993).

26. *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991).

27. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

28. *Id.* at 687, 104 S.Ct. 2052.

29. *Parsons v. Barnes,* 871 P.2d 516, 526 (Utah 1994).

¶ 40 Because Nicholls has failed to satisfy the first prong of *Strickland,* we need not reach the second prong—that Nicholls was prejudiced by his counsel's performance. We note, however, that Nicholls has pointed to no record evidence to show that he would have garnered a more favorable result had he not pled guilty. That is, there is no evidence to suggest that he was prejudiced by his counsel's performance.

## CONCLUSION

¶ 41 We hold that Nicholls has failed to demonstrate that, due to mental illness, his plea was not knowing and voluntary. We also hold that Nicholls has failed to demonstrate that he received ineffective assistance of counsel. Thus, we affirm the district court's dismissal of Nicholls's PCRA petition.

¶ 42 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.