**UNITED STATES COURT OF APPEALS**

March 11, 2014

**TENTH CIRCUIT**

CRAIG DUNCAN NICHOLLS,

    Petitioner - Appellant,

v.

ALFRED BIGELOW, Warden at the
Central Utah Correctional Facility,

    Respondent - Appellee.

No. 13-4065
(D.C. No. 2:09-CV-00982-TC)
(D. Utah)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **O'BRIEN,** and **GORSUCH**, Circuit Judges.

Craig Nicholls, a Utah state prisoner, filed a pro se application for relief under

28 U.S.C. § 2254 in the United States District Court for the District of Utah. The district

court denied his application. Mr. Nicholls now seeks a certificate of appealability (COA)

from this court to pursue an appeal. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to

appeal denial of § 2254 application). He claims entitlement to relief on the grounds (1)

that his guilty plea was not knowing and voluntary because of his mental illness

(depression), his lack of participation in preparing his plea statement, an unfair plea

colloquy, and absence of a factual basis for his plea; (2) that the state judge engaged in

misconduct, including a violation of Utah Rule of Criminal Procedure 11(i), by participating in the plea negotiations; (3) that he received ineffective assistance of counsel in deciding whether to plead guilty; and (4) that the lack of an evidentiary hearing in the state courts made the state-court decisions unreasonable and not binding on the federal courts. He also challenges the denial of an evidentiary hearing in federal district court. We deny a COA and dismiss the appeal.

## I.  BACKGROUND

Mr. Nicholls pleaded guilty to one count of aggravated murder in Utah state court. He executed a Rule 11 waiver/statement of facts to demonstrate that his plea was voluntary and intelligent and to set forth the facts of his offense. The Utah Supreme Court later summarized the facts as follows:

> After consulting with his girlfriend, Tamara Rhinehart, Nicholls agreed to kill Rhinehart's ex-husband, Michael John Boudrero. In July 2003, Nicholls called Boudrero and asked him to come to a construction site to help with a plumbing job. At the same time, Rhinehart was planning to attend a movie with her children to provide an alibi for Nicholls, who planned to show up late for the movie after he killed Boudrero.
>     Between 8 and 9 p.m., Boudrero arrived at the construction site, and Nicholls led him to the basement. Nicholls then shot Boudrero in the back and chest, dragged him into a storage room, stole property from him, locked the body in the storage room, and escaped in Boudrero's car.
>     Investigators quickly focused on Nicholls and Rhinehart as suspects. Nicholls used a prepaid phone card to call Boudrero to set up the meeting; the phone card was traced to Nicholls through video surveillance showing him purchasing the card at a Wal-Mart in Brigham City. Investigators also received tips from confidential informants who said that Rhinehart had told them about a plan that "was going to happen soon," by which she meant her ex-husband "was going to be gone." Rhinehart also told an informant that her boyfriend was going to kill Boudrero.

Nicholls was charged with one count of aggravated homicide, a capital felony, and one count of purchasing, transferring, possessing, or using a firearm by a restricted person, a third degree felony. The State initially sought the death penalty.

*Nicholls v. State*, 203 P.3d 976, 978 (Utah 2009) (footnote omitted).

The Utah trial court conducted a thorough plea colloquy. It began by inquiring whether Mr. Nicholls was competent to proceed:

> The Court: [A]re you under the influence of any drugs, medication or alcohol?
> [Mr. Nicholls]: No, sir.
> The Court: Are you confident that you are in complete control of your mental faculties and are able to proceed today?
> [Mr. Nicholls]: Yes, sir.
> The Court: Any reason you can think of not to proceed?
> [Mr. Nicholls]: No, sir.

R., Vol. I at 37. The prosecutor then read aloud Mr. Nicholls's plea statement, asking him to confirm or deny everything included in the document. That exchange concluded with the following:

> [Prosecutor]: "No threats or promises of any sort have been made to me to induce me or to persuade me to enter this plea."
> [Mr. Nicholls]: Yes, sir.
> [Prosecutor]: "No one has told me that I would receive any form of leniency because of my plea."
> [Mr. Nicholls]: Yes, sir.
>     . . . .
> [Prosecutor]: "I have discussed this case and the plea with my attorneys as much as I wish to. I have no further questions of my lawyer prior to the court taking my plea." Is that correct?
> [Mr. Nicholls]: Yes, sir.
> [Prosecutor]: "I am satisfied with my lawyer's counsel and advice."
> [Mr. Nicholls]: Yes, sir.
> [Prosecutor]: Seven, "My decision to enter this plea was made after full and careful thought, with the advice of counsel and with a full

3

understanding of my rights and the facts and circumstances of the case and the consequences of the plea. I was not under the influence of any drugs, medication or intoxicants when the decision to enter the plea was made and I am not now under the influence of any drugs, medication or intoxicants."
[Mr. Nicholls]: Yes, sir.
[Prosecutor]: "I have no mental reservations concerning this plea."
[Mr. Nicholls]: Yes, sir.

*Id.* at 54–55. After the statement was read aloud and confirmed by Mr. Nicholls, the court asked him (1) if he understood that if he did not plead guilty he would have a presumption of innocence and would be entitled to a jury trial and (2) if he was making his plea "intelligently, knowingly, voluntarily, and intentionally." *Id.* at 56. The court also established that he understood that immediate imposition of sentence would mean he could not withdraw his plea. The court then accepted the plea and sentenced Mr. Nicholls to life in prison without parole.

Mr. Nicholls later filed a pro se motion to withdraw his plea. The state trial court dismissed for lack of jurisdiction because it had already imposed sentence. He then filed a pro se motion under Utah Rule of Criminal Procedure 22(e) to correct his sentence and arrest judgment, and the court dismissed again for lack of jurisdiction. Mr. Nicholls appealed to the Utah Supreme Court, which dismissed the appeal, stating that he could challenge his guilty plea only in a postconviction proceeding. The Utah Supreme Court eventually affirmed denial of his later postconviction challenge. *See Nicholls*, 203 P.3d at 978. He then filed his § 2254 application in federal district court. The district court denied relief, and Mr. Nicholls appeals.

## II. DISCUSSION

### A. Standard of Review

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1), (2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if

5

the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* Rather, that application must have been unreasonable. For those of Mr. Nicholls's claims which the Utah Supreme Court adjudicated on the merits, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

In reviewing the state-court decision, we are "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). If a petitioner desires an evidentiary hearing on a claim that the state court did *not* decide on the merits, AEDPA requires the applicant to have "develop[ed] the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254 (e)(2). If the petitioner failed to develop the factual basis in state court, then he cannot receive an evidentiary hearing unless the claim "relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court . . . or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* § 2254(e)(2)(a). If the applicant did not fail to develop the factual basis of his claims in state court proceedings, then pre-AEDPA standards apply, and the applicant

6

must show that "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." *Littlejohn v. Trammell*, 704 F.3d 817, 858 (10th Cir. 2013) (internal quotation marks omitted).

### B.    Whether the Plea was Knowing and Voluntary

Mr. Nicholls argues that his plea was not knowing and voluntary. First, he alleges that his mental condition at the time, in part caused by his not having access to prescription medication for depression that he had been taking before his arrest,[1] caused him not to understand the plea process or the plea hearing. The Utah Supreme Court rejected this claim on the grounds that "[n]othing in the plea colloquy suggested that [Mr.] Nicholls was incompetent." *Nicholls*, 203 P.3d at 981. It summarized the plea proceedings, observing that he participated in the proceedings, gave "precise, appropriate answers at appropriate times," and indicated that he understood what was going on. *Id.* In addition, the court stated that "[d]epression is not sufficient . . . to establish incompetence," which is measured by whether the defendant can rationally consult with his lawyer and understand the proceedings against him. *Id.* at 982. Mr. Nicholls has never presented any evidence, or even an allegation, that he was suffering from any mental infirmity other than depression at the time of the plea. The court's ruling was not contrary to or an unreasonable application of clearly established law. *Cf. United States v. Mackovich*, 209 F.3d 1227, 1233 (10th Cir. 2000) ("[T]his circuit has long recognized

---

[1]  Mr. Nicholls alleges that the jail administration would not let him have access to his medication and that state detectives were withholding the medication from him. But he provided no evidence to support the allegations.

that the presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to assist in his own defense." (brackets, ellipses, and internal quotation marks omitted)).

Second, Mr. Nicholls argues that his plea was not knowing and voluntary because he took no part in preparing his plea statement and had not read or touched it before the hearing. But he presents no evidence, as opposed to unsworn allegations, to support his factual assertions.

Third, Mr. Nicholls argues that his statements at the plea hearing should not be used to defeat his claims because his answers in the plea colloquy were crafted by the prosecutor, he was constrained to one-word answers, and he was instructed by counsel to answer as he did. The only evidence to support this claim was his sworn statement in state court that his counsel told him "you must convince the judge this is your decision." R., Vol. I at 77. But this statement is not an allegation that counsel compelled him to answer any specific question in any specific way.

Finally, Mr. Nicholls argues that his plea did not have a sufficient factual basis. This claim is squarely contradicted by his plea statement, which sets out in detail the actions he took to plan and commit the murder. These admissions were sufficient to establish the elements of the offense.

No reasonable jurist would debate the district court's rejection of Mr. Nicholls's claim that his plea was not knowing or voluntary.

C.     **Judicial Misconduct**

8

Mr. Nicholls contends that he is entitled to relief because of judicial misconduct. First, he relies on Utah Rule of Criminal Procedure 11(i)(1), which states, "The judge shall not participate in plea discussions prior to any plea agreement being made by the prosecuting attorney." He contends that the trial judge violated the rule by participating in his plea negotiations. A violation of state law, however, does not in itself provide a ground for § 2254 relief. *See Davis v. Workman*, 695 F.3d 1060, 1079 (10th Cir. 2012). Mr. Nicholls must show "that the trial judge's participation denied [him] due process of law by causing him not to understand the nature of the charges against him or the consequences of the guilty plea, or [that] the judge's participation coerced the defendant to enter into a plea bargain involuntarily." *Miles v. Dorsey*, 61 F.3d 1459, 1467 (10th Cir. 1995) (internal quotation marks omitted).

Even if we were to read Mr. Nicholls's § 2254 application as alleging a due-process violation, there is no evidence to support the allegation. Mr. Nicholls relies on a statement by the judge at the plea colloquy:

> I would like in a discussion we had in your absence, Mr. Ward [a prosecutor], but in the presence of Mr. Caine [defense counsel] and his co-counsel, Mr. Demler, in order to proceed with this matter I would prefer that the defendant be sworn and take the witness stand for examination relative to his competency and his understanding of the plea and in connection with the Rule 11 statement of waiver. Mr. Daines [a prosecutor] indicated that he would like to conduct that examination and I think that would be an appropriate procedure.

R., Vol. I at 36. Although this statement alludes to a meeting between the court and counsel before the plea colloquy, there is no indication that the court participated in

9

negotiating the substance of the agreement, and Mr. Nicholls has provided no evidence that the prehearing meeting was anything other than a meeting to discuss procedure during the colloquy. Certainly nothing rose to the level of coercing Mr. Nicholls to accept the plea (after all, Mr. Nicholls was not present at the meeting).

Next, Mr. Nicholls contends that the trial judge demonstrated bias by not asking the state what evidence it had to support the plea and not inquiring properly into whether the plea was knowing and voluntary. But we see no shortcoming in the trial court's conduct of the plea hearing. Certainly Mr. Nicholls has not provided any Supreme Court decision that required the court to do more than it did.

No reasonable jurist would debate the district court's denial of the claim of judicial misconduct.

### D.    Ineffective Assistance of Counsel

Mr. Nicholls next argues that he received ineffective assistance of counsel in preparing his case and deciding to accept a plea. To prevail on a claim of ineffective assistance of counsel, the "defendant must show [(1)] that counsel's representation fell below an objective standard of reasonableness" and (2) that he was prejudiced by the substandard representation. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant [has] to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (internal

quotation marks omitted).  Mr. Nicholls alleges that his counsel were ineffective when they (1) failed to investigate and prepare his case, (2) coerced him into entering a guilty plea, and (3) failed to apprise the court of his mental-health issues.  We examine each allegation in turn.

### 1. Investigation and Preparation

Mr. Nicholls asserts that his counsel spent very little time with him, refused to accept his phone calls, and did not file sufficient motions, conduct an independent investigation, develop a defense strategy, or review his medical history.  He further alleges that counsel improperly waived a preliminary hearing and interviewed only one potential witness.  The Utah Supreme Court considered these claims and found them insufficient to meet *Strickland*'s first prong, representation "below an objective standard of reasonableness."  *See Nicholls*, 203 P.3d at 983 (internal quotation marks omitted).  The court correctly observed that there was insufficient evidence to support allegations that defense counsel had done so little work on the case.  *See id.*  Although Mr. Nicholls stated in his sworn state-court petition that his lead counsel "never accepted one phone call from petitioner" and that he "came to the jail twice totalling [sic] about 30 mins," R., Vol. I at 78, he also submitted a log from the jail detailing his visits and phone calls, and it indicates that he had at least eight visits from his attorneys before the date of the plea hearing.  The Utah court also reviewed the plea colloquy, noting that Mr. Nicholls expressed his satisfaction with his legal representation.  *See Nicholls*, 203 P.3d at 983.  And, of course, counsel enabled Mr. Nicholls to escape the death penalty.  The Utah

11

Supreme Court decision was not contrary to or an unreasonable application of clearly established law.

### 2. Coercion

Mr. Nicholls alleges his counsel used tactics on the day of the plea to coerce him into pleading guilty. His brief in our court alleges that his counsel told him that he needed to accept a plea that day, although he had not authorized plea discussions; that when he told counsel he wanted to go to trial, counsel argued with him for an hour and a half until it was clear that counsel were unwilling to go to trial and he agreed to plead guilty; and that during this meeting counsel promised him "medications, an appeal, [his] family and even Prisneyland" if he pleaded guilty. App. Br. at 18. But the only evidence in the record to support these allegations is Mr. Nicholls's assertion in his sworn state-court petition that "Counsel was aware of the petitioner[']s precarious state of health but forced him to capitulate to their demands anyway by badgering and verbally abusing the petitioner for the next 3 hrs so that the 13h00 deadline would be met using statements like . . . you will get medication as soon as you get to prison."[2] R., Vol. I at 76–77.

Pointing to Mr. Nicholls's statements at the plea colloquy that he was not threatened or promised anything in return for the plea, the Utah Supreme Court rejected this claim. *See Nicholls*, 203 P.3d at 983. Its ruling was neither contrary to nor an unreasonable application of clearly established law: "[T]he representations of the

---

[2] Mr. Nicholls also cites to an affidavit filed in federal district court with his § 2254 application. But that document was not before the state courts that decided this issue on the merits, so we cannot consider it. *See Cullen*, 131 S. Ct. at 1398.

12

defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). We have recognized that sometimes this barrier can be overcome, but the court must "look[] closely at both the petitioner's allegations and the circumstances in which he pled guilty." *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. For example, although Mr. Nicholls's brief suggests that his counsel had threatened him with deprivation of his medication if he did not plead guilty, Mr. Nicholls has not actually sworn to that assertion. Indeed, in his § 2254 application he acknowledges that counsel's statement that he could get his medications in prison was a true statement. Although he argues that the statement was nevertheless coercive, presenting the brutal facts to a client is the job of counsel; it is not coercion. The gist of Mr. Nicholls's claim appears to be only that his counsel strongly urged him to plead guilty. But this is proper conduct by an attorney if he believes that a plea is the best course. *See Miles*, 61 F.3d at 1470.

Mr. Nicholls also claims that his counsel did not explain the rights he would give up by pleading. But any failure in this regard was rendered harmless by the trial court's exhaustive colloquy, which advised him of his rights before he pleaded guilty. *See*

13

*United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) ("In light of the court's careful explanation of the plea's consequences and [defendant's] testimony that he understood those consequences, [defendant's] allegation that he would have gone to trial but for his attorney's failure to advise him of the career-offender provision is insufficient to establish prejudice.").

Finally, Mr. Nicholls argues that the short amount of time between the arrest and the plea (three months and 12 days) shows that the plea was rushed. But he cites no authority, and we are aware of none, that such a period of time between an arrest and a plea indicates a violation of the defendant's constitutional rights.

### 3. Failure to Communicate with the Court

Mr. Nicholls further argues that his counsel should have, but did not, present to the court evidence about his mental-health issues that rendered him incompetent to plead guilty. But as discussed earlier, there is no evidence in the record that he was incompetent when he pleaded. His counsel's failure to present a meritless argument did not cause his representation to fall below an objective standard of reasonableness.

No reasonable jurist would debate the denial of Mr. Nicholls's claim of ineffective assistance of counsel.

### E. Evidentiary Hearing

Mr. Nicholls argues that the refusal of the state courts to grant him an evidentiary hearing to develop the factual basis of his claims undermines their decisions and the basis for this court to grant them deference. But he does not suggest what specific evidence

would have been elicited at such a hearing or why the new evidence would entitle him to relief.

Mr. Nicholls also challenges the denial of his request for an evidentiary hearing in district court. But a § 2254 applicant is not entitled to an evidentiary hearing if he "has failed to develop the factual basis of [his] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Requesting an evidentiary hearing in state court is not always sufficient, on its own, to meet the standard. *See Cannon v. Mullin*, 383 F.3d 1152, 1176–77 (10th Cir. 2004). "The federal district court should not be required to conduct an evidentiary hearing on a claim when the applicant for relief has not presented evidence that would be readily available if the claim were true." *Id.* at 1177. If Mr. Nicholls's claims are meritorious, he should have personal knowledge of facts establishing their merit. Yet, the one sworn pleading filed in state court does not, as discussed above, provide evidence sufficient to overcome Mr. Nicholls's sworn statements at the plea colloquy. Mr. Nicholls failed to develop the factual basis of his claims in state court, so the district court properly declined to grant an evidentiary hearing.

## III.    CONCLUSION

We DENY Applicant's motion for a stay. We DENY the application for a COA and DISMISS the appeal. We GRANT Applicant's motion to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge
15