2011 UT App 383

**STATE of Utah, Plaintiff and Appellee,**

v.

**William Eli FOWERS, Defendant and Appellant.**

No. 20090787–CA.

Court of Appeals of Utah.

Nov. 10, 2011.

Samuel P. Newton, Ogden, for Appellant.

Teral L. Tree, Ogden, for Appellee.

Before Judges McHUGH, ORME, and THORNE.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 William Eli Fowers appeals from his conviction of one count of criminal solicitation. *See* Utah Code Ann. § 76–4–203 (2008). Fowers argues that defense counsel was ineffective in introducing evidence of Fowers's twenty-five-year-old conviction for sodomy on a child and for failing to move for a mistrial in response to the prosecutor's comment during closing argument suggesting a relationship between Fowers's bisexuality and pedophilia. Fowers also argues that the trial court committed plain error and that defense counsel was ineffective in allowing two counts of criminal solicitation involving different complainants to be joined. *See id.* § 77–8a–1 (2008). We reverse and remand for a new trial.

## BACKGROUND

¶ 2 Fowers was charged with two counts of criminal solicitation for events arising out of his interactions with two fifteen-year-old boys: K.C. and T.R. The charges were tried together before the same jury. K.C. testified that in early March 2009, he was approached by Fowers at approximately 7:00 a.m., while K.C. was waiting for a bus to take him to his alternative high school. According to K.C., Fowers approached him on foot after parking his red truck approximately twenty feet away. Fowers asked if K.C. would like a ride to school, and K.C. accepted "[b]ecause [he] was cold, and [he] had just missed the bus." During the drive, K.C. revealed that he liked mechanics. Fowers gave K.C. his name and telephone number and dropped K.C. at school.[1]

¶ 3 Approximately one week later, K.C. saw Fowers early in the morning while K.C. was walking to his bus stop. Fowers asked

K.C. if he wanted a ride to school, and K.C. again accepted. Fowers then asked K.C. if he would like to "check out [Fowers's] apartment," and K.C. agreed "[b]ecause [he] had spare time, and ... nothing else to do." K.C. stated that Fowers offered him breakfast, which he declined, and then gave him some "papers" that had "[s]omething about triple X" on them and some mechanics papers. K.C. testified that Fowers then questioned him about his sexuality, asking if K.C. "was straight or gay" and what K.C. "thought about giving head." According to K.C., he told Fowers that he "was straight" but did not respond to Fowers's queries about fellatio. K.C. testified that Fowers then inquired "what it would take for [K.C.] to perform oral sex" on Fowers and "went off on drugs and alcohol." K.C. asked Fowers for money, and Fowers gave him twenty dollars, stating that it was "on a trust basis" with the understanding that K.C. would perform oral sex on Fowers after school. Fowers then took K.C. to school. After school, K.C. did not meet Fowers, and although Fowers offered K.C. rides on a couple of subsequent occasions, K.C. declined the invitations.

¶ 4 T.R. also testified about his interactions with Fowers. He stated that in mid-March 2009, he was approached by Fowers near his high school, the same alternative high school that K.C. attended. According to T.R., he was waiting for the bus after school at approximately 2:30 or 2:45 p.m. when Fowers pulled up in a red truck. T.R. testified that Fowers asked him if he wanted a ride and that he said "no." Fowers then asked T.R. if he would like to help Fowers "move [his] storage," an offer that T.R. likewise rejected. According to T.R., Fowers then asked if T.R. "wanted to get [his] dick sucked." When T.R. declined, Fowers offered him twenty dollars and some chewing tobacco. After T.R. again refused, Fowers drove away. Suspecting that Fowers might return the following day, T.R. waited at the same spot with a friend. T.R. testified that Fowers approached him again, this time driving a

---

1. The telephone number was subsequently identified as belonging to Fowers.

green truck,[2] and that Fowers offered T.R. fifty dollars to allow Fowers to perform oral sex on T.R. T.R. testified that he continued talking to Fowers while his friend wrote down the truck's license plate number. The friend did not hear the conversation between Fowers and T.R., but she was successful in recording Fowers's plate number. T.R. then called the police and reported the incident. The police identified Fowers as the owner of the vehicle assigned to the plate number provided by T.R.'s friend.

¶ 5 The record indicates that both boys appeared at trial dressed in institutional clothing associated with the juvenile facility to which they were assigned. The prosecutor admonished the jury to disregard that fact, noting in his opening statement that K.C. and T.R. would "be dressed alike. That's because they're both in the same juvenile facility." During closing argument, the prosecutor argued that the jury should believe the testimony of the boys due to the inconvenience they had suffered in order to testify, stating, "[K.C.] and [T.R.] have to sit ... in a little cell together sitting here all day and waiting so they could come and testify to you. Had to be shackled, brought here to court to testify to you as to what happened."

¶ 6 Fowers testified in his own defense. He admitted to having contact with the two boys but denied that there was anything inappropriate about the interactions and specifically denied soliciting oral sex with either boy. Fowers stated that he had seen K.C. approximately four times and had taken him to school twice. He testified that their first interaction took place at approximately 7:00 a.m., when Fowers was driving home from work. According to Fowers, K.C. waved him over and Fowers initially stopped because it was still dark and he thought K.C. was an old friend. Fowers stated that K.C. asked for a ride to school and that he agreed to take him. During the drive, Fowers asked K.C. general

questions about his future, to which K.C. responded that he was in a group home for "drugs, this, that and the other." He then dropped K.C. at school. Approximately one week later, Fowers saw K.C. again in approximately the same area and stopped his car. Fowers testified that K.C. asked him for twenty dollars. Fowers refused to give it to him, reflecting that "[m]aybe if [K.C.] was willing to work or something[,] ... but [he] wasn't just going to give [K.C. twenty dollars] because [he did not] even know the guy." Fowers claims that he dropped K.C. at school and never saw him again.

¶ 7 Fowers also testified about his interactions with T.R. He stated that he was driving in the area near the school and "observed [T.R.] in the parking lot [of a business] between two cars ... looking for things through the window." Out of concern, Fowers entered the parking lot, and T.R. came "over towards [Fowers] kind of nervous like, and [T.R.] asked [Fowers] if [Fowers] had a cigarette." Fowers did not have any cigarettes, but he offered T.R. chewing tobacco and advised T.R. that he could earn some money by helping Fowers's friend move storage. Fowers claims that he was motivated by concern that T.R. "was scrounging for cigarette butts, and [because of] mono diseases and whatever you can get off other people's cigarettes." According to Fowers, T.R. declined the offer, stating that he was on his way to his job at a local restaurant. When Fowers asked T.R. about someone Fowers knew who worked at the restaurant, T.R. "got kind of nervous [and] said, 'No, I'm J[J]S.[3] I'm group home controlled,' or something."

¶ 8 Fowers admitted to seeing T.R. the following day by a bus stop in the same area. He testified that T.R. waved him down and insisted that Fowers give him a ride, stating that T.R. was "almost trying to get [Fowers's] door open on the driver's side to get in." He stated that T.R.'s friend went be-

**2.** K.C. also testified that he saw Fowers driving a green truck but was unsure during which of their interactions Fowers was driving it.

**3.** Although the record reflects that T.R. said he was JSS, we presume the reference should be to JJS, or Juvenile Justice Services. The Division of

Juvenile Justice Services, formerly known as the Division of Youth Corrections, has jurisdiction over youth placed in state supervision and committed to its custody under Utah Code section 78A–6–117. *See* Utah Code Ann. § 62A–7–102 (Supp.2011).

hind his truck, and then the two left. Fowers was arrested approximately three hours later.

¶ 9 During trial, the trial judge and the attorneys participated in an off-the-record discussion held outside the presence of the jury, during which they addressed the admissibility of Fowers's twenty-five-year-old conviction for sodomy on a child.[4] The State argued that defense counsel had "opened the door" during opening statements so that it was entitled to introduce evidence of Fowers's prior conviction.[5] The trial court disagreed, stating that "while [defense counsel] may have come close, he had not sufficiently opened the door to allow the prior sodomy conviction." In addition, the trial court concluded that the evidence "would be substantially more prejudicial than probative" under rule 403 of the Utah Rules of Evidence. Ultimately, the trial court denied the State's request to introduce the evidence.

¶ 10 After the State completed its case-in-chief, defense counsel requested a recess to discuss an issue on the record. When the jury was excused, defense counsel explained that he had talked with Fowers about whether he should testify in his own defense. Apparently believing that Fowers could be cross-examined about the twenty-five-year-old conviction if he decided to testify, defense counsel stated, "I've explained the risks of testifying to him, that his past history would come in, despite the fact that it's [twenty-five] years old, that could possibly be used against him." Defense counsel further revealed that he had advised Fowers not to testify. The trial court was not asked to readdress the admissibility of Fowers's twen-

ty-five-year-old conviction and did not volunteer any opinion concerning defense counsel's assumptions about the introduction of the prior conviction.[6] Instead, the trial court clarified Fowers's right to testify, if he chose to do so, stating,

> Mr. Fowers, the primary issue is that you have a constitutional right to testify. You also have a constitutional right not to testify. If you decide to testify, you are subject to cross-examination by [the prosecutor].... There may be evidence that he seeks to introduce that could be harmful to your case or to you.
>
> I'm not telling you what that evidence would be, but that's always a possibility. Your attorney has indicated that he has evaluated the potential evidence that could be introduced, should you testify, and in his opinion he is recommending that you not testify in this case. Ultimately that decision is yours.

Against the advice of counsel, Fowers decided to testify.

¶ 11 Based on an apparent misunderstanding, on defense counsel's part, that the trial court had ruled that the prior conviction could be admitted if Fowers testified, defense counsel raised the issue during direct examination, stating, "Just because I know the State probably is going to bring it up, you've been to prison before?" When Fowers admitted that he had, defense counsel continued, "In fact, you went down on a sodomy charge; is that right?" Fowers maintained that his conviction was twenty-five years ago. Then, when defense counsel questioned whether the conviction had "anything to do with picking up kids," Fowers responded that

4. Although this discussion was not initially recorded, this court granted Fowers's motion for remand under rule 23B of the Utah Rules of Appellate Procedure, and the trial court conducted a hearing to reconstruct the matters discussed and rulings made during the hearing. A transcript of that hearing on remand is now part of the record on appeal and is the basis for our recitation of what occurred during the unrecorded bench conference.

5. It is not apparent from the reconstructed record which of defense counsel's statements during opening argument formed the basis of the State's argument that the defense had "opened the door," thereby allegedly making Fowers's prior

conviction admissible. Nor does our examination of defense counsel's opening statement readily reveal the offending comments.

6. From the discussion on the record, it appears that an off-the-record discussion about the admissibility of the evidence under rule 404(a) had already taken place. The gaps in the record on appeal make it unclear whether defense counsel erroneously interpreted the court's prior decision under rule 404(a) or believed that the conviction was independently admissible under some other rule of evidence. However, there is no indication that the State argued for its admissibility under any rule of evidence other than rule 404(a).

"it was a dispute over my girlfriend—a live-in girlfriend."

¶ 12 During cross-examination, the prosecutor asked Fowers how he "would describe [him]self sexually," whether he was "straight, gay, bisexual." The defense did not object to this question, and Fowers responded that he was bisexual. The prosecutor then had Fowers clarify that the prior conviction was for "sodomy upon a child." During closing argument, the prosecutor stated that Fowers's sexual preference was consistent with the criminal allegations of soliciting oral sex with the boys, stating, "The defendant admitted on the stand that he was bisexual. This kind of activity would definitely go—fall under the activity of a bisexual, somebody that likes boys." Defense counsel objected. The trial court sustained the objection and ordered that the statement be stricken from the record. However, defense counsel did not make a motion for a mistrial or request that a curative instruction be given to the jury.

¶ 13 During the defense's closing argument, counsel implored the jury to disregard Fowers's bisexuality. However, the prosecutor again used Fowers's sexual preference in his rebuttal argument seeking a conviction, although he softened his comments in light of the prior objection. Rather than arguing that Fowers's sexual preference equated with an attraction to "boys," the prosecutor stated that Fowers's bisexuality meant that "he likes men, and the nature of this crime involves people who like men." The defense made no further objections to the State's closing argument.

¶ 14 The jury found Fowers guilty of the charge involving K.C., but not guilty of the charge involving T.R. Fowers now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 15 Fowers argues that defense counsel was ineffective in eliciting testimony from Fowers about his twenty-five-year-old conviction for sodomy on a child and in failing to move for a mistrial following the prosecutor's comments during closing argument linking bisexuality and pedophilia. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question

of law, which we review for correctness." *State v. Walker*, 2010 UT App 157, ¶ 13, 235 P.3d 766 (internal quotation marks omitted). To support a claim that counsel was ineffective, a defendant must first " 'show that counsel's performance was deficient.' " *Nicholls v. State*, 2009 UT 12, ¶ 36, 203 P.3d 976 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). " 'Second, the defendant must show that the deficient performance prejudiced the defense,' " *id.* (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052), in that, "absent the errors," there is a reasonable probability that "the fact finder would have had a reasonable doubt respecting guilt," *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052.

¶ 16 Fowers also argues that the trial court committed plain error and that defense counsel was ineffective in allowing the charges involving K.C. and T.R. to be joined. Because we agree that Fowers was prejudiced by his counsel's ineffectiveness, we need not address this issue. Although we remand for a new trial on the charge concerning K.C., joinder will not be an issue due to the jury's not guilty verdict on the charge related to T.R.

## ANALYSIS

### I. Ineffective Assistance of Counsel

¶ 17 Fowers contends that his trial counsel was ineffective for eliciting testimony about Fowers's twenty-five-year-old conviction for sodomy on a child and for failing to move for a mistrial in response to the following statement made by the prosecutor during closing argument: "The defendant admitted on the stand that he was bisexual. This kind of activity would definitely go—fall under the activity of a bisexual, somebody that likes boys."

¶ 18 To establish that he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution, *see* U.S. Const. amend. VI, Fowers bears the burden of proving that trial counsel's performance was deficient, in that his " 'counsel's representation fell below an objective standard of reasonableness.' " *Nicholls*, 2009 UT 12, ¶ 37, 203

P.3d 976 (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). "When reviewing ineffective assistance of counsel claims, we strongly presume that trial counsel provided adequate assistance and that any action complained of was sound trial strategy." *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082. Notwithstanding that presumption, we agree with Fowers that defense counsel's conduct in introducing the evidence of the prior conviction was deficient.

¶ 19 First, the defense had already obtained a ruling excluding the evidence. On remand, the trial court and counsel placed on the record their best recollection of the off-the-record discussion about whether the evidence would be admitted. The trial court stated, "I think the Court felt that ... under Rule 403 of the Rules of Evidence that that prior conviction would be substantially more prejudicial than probative." The trial court's memory was consistent with the prosecutor's and not inconsistent with defense counsel's. While the trial court did not comment on defense counsel's subsequent statement that he had "explained the risks of testifying to [Fowers], that [Fowers's] past history would come in, despite the fact that it's [twenty-five] years old," neither party asked for a ruling at that time. Instead, the discussion was about Fowers's desire to testify. The trial court could have easily understood defense counsel's warning to Fowers as an acknowledgment of the court's prior ruling under rule 404(a), excluding the evidence, but cautioning that it might become admissible if the defense "opened the door." [7] *See* Utah R. Evid. 404(a) (allowing for the introduction of a defendant's pertinent character trait by the prosecution in order to rebut the defense's introduction of a character trait of the alleged victim).

¶ 20 Second, we can conceive of no sound tactical reason for the defense to introduce the evidence of Fowers's prior conviction.

The State contends that "defense counsel had a purpose in asking about the prior conviction" because defense counsel elicited that Fowers "had never been involved in any kind of solicitation" and that the prior conviction was related to Fowers's relationship with a female—albeit an underage one. However, the transcripts of the jury trial and of the 23B remand hearing do not support the conclusion that the evidence was introduced as part of the defense's strategy. At the 23B remand hearing, defense counsel had no memory of the conversation, but indicated that it would have been consistent with his practice to "object[ ] to the prior record coming in." Further, the trial transcript includes a contemporaneous statement of why defense counsel introduced the evidence: "Just because I know the State probably is going to bring it up...." Thus, the transcript indicates that it was defense counsel's misunderstanding about the trial court's ruling, and not any perceived tactical advantage, that resulted in defense counsel eliciting the evidence during direct examination in a misguided attempt to minimize its impact. Indeed, it is difficult to imagine that the defense would have raised it otherwise. Despite the prosecution's efforts to identify one, we can think of no tactical or strategic advantage that could justify the defense's decision to alert the jury that was charged with deciding whether Fowers had solicited oral sex from boys to the fact that Fowers had previously been convicted of actually engaging in a sex act with a minor. This is true even if the minor in the prior instance was female. Consequently, we conclude that counsel's performance in eliciting this testimony was deficient.

¶ 21 In addition to establishing that defense counsel's performance was deficient, Fowers must show that the deficiency was prejudicial in order to prevail on his claim of

---

7. On appeal, the State argues that defense counsel had a strategic reason for eliciting the information about the prior conviction on direct examination because the evidence would have been admitted under rule 404(b) of the Utah Rules of Evidence. Perhaps more accurately assessing the likelihood of success on that theory of admissibility at the trial court level, the State never argued to the trial court that the twenty-five-year-old conviction was admissible under subsection (b) of rule 404. Therefore, we decline to consider that argument for the first time on appeal. *See State v. Leber*, 2010 UT App 387, ¶ 11, 246 P.3d 163 ("Because the State raised its rule 404(b) argument for the first time on appeal ... we decline to exercise our discretion to consider it." (citing *Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158)).

ineffective assistance of counsel. "To show prejudice in the ineffective assistance of counsel context, the defendant bears the burden of proving that counsel's errors actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that prejudice is demonstrated where the defendant can show that "absent the errors," there is a reasonable probability that "the fact finder would have had a reasonable doubt respecting guilt").

¶ 22 The testimony about Fowers's past conviction for sodomy on a child elicited by defense counsel had a tendency to prejudice the jury against Fowers. In *State v. Banner*, 717 P.2d 1325 (Utah 1986), the defendant was charged with sexual abuse of a child and sodomy upon a child. *See id.* at 1326. Prior to trial, the defense sought an order excluding evidence of the defendant's prior convictions for assault with intent to commit rape. *See id.* at 1331. When the trial court denied the motion, the defendant decided not to testify. *See id.* Concluding that the eight-year-old and nine-year-old convictions were remote in time and that they "would be extremely prejudicial and tend to inflame the jury on any case dealing with sex crimes, particularly sex crimes involving a child," the Utah Supreme Court held that the evidence would not have been properly admitted and that the defendant had been prejudiced because the trial court's ruling bore directly on his decision not to testify.[8] *See id.* at 1335. The supreme court explained, "[T]he accused's testimony and the importance of credibility in this case were critical in determining whose version of the facts was correct since the prosecution's case included no decisive nontestimonial evidence." *Id.; see also State v. Gentry*, 747 P.2d 1032, 1037–39 (Utah 1987) (remanding for a new trial on charges of aggravated sexual assault where the trial court allowed the prosecution to

admit evidence of the defendant's ten-year-old rape conviction that "was highly likely to prejudice jurors and unduly influence their conclusion concerning defendant's guilt"). Evidence that a defendant has committed a prior sexual offense against a child is particularly likely "to suggest a verdict on an improper, emotional basis." *See State v. Burke*, 2011 UT App 168, ¶ 40, 256 P.3d 1102 (internal quotation marks omitted).

¶ 23 In the present case, there were no other witnesses or physical evidence to substantiate the allegations against Fowers. Thus, the jury was tasked with resolving a classic credibility contest between Fowers on the one hand and the two boys on the other. Fowers admitted to interacting with the two boys near their school, but denied that he requested that they engage in oral sex with him. According to Fowers, he felt sorry for the boys and was trying to help them. Although the boys testified to a different version of events, there is no corroborating nontestimonial evidence for either story. Without the evidence of the prior conviction, the jury might have been more inclined to believe Fowers. The jury was aware that the boys were residents of a juvenile detention facility, both because they testified while wearing identical institutional clothing and because the prosecutor revealed that they had been shackled while waiting to testify. The jury also heard testimony that the boys attended the same alternative high school. Accordingly, unlike multiple victims who are strangers to one another, the boys here had an opportunity to collaborate on their version of events.

¶ 24 Moreover, the jury apparently did not feel confident enough in T.R.'s story to convict Fowers on that charge. Where the jury had at least some question about the truthfulness of the testimony concerning the solicitation charges, the information about Fowers's prior conviction may have influenced it to convict Fowers on at least one of the charges. In the absence of information about Fowers's past conviction and by extension, his bisexuality, the jury may have re-

---

8. In *State v. Gentry*, 747 P.2d 1032 (Utah 1987), the Utah Supreme Court held that a defendant must testify in order to preserve his objection to a pretrial ruling on impeachment evidence. *See id.* at 1036.

solved the credibility contest between Fowers and K.C. differently. *See, e.g., State v. Snyder*, 860 P.2d 351, 360–61 (Utah Ct.App. 1993) (holding that trial counsel's failure to file a motion to suppress evidence, which implied that children sexually aroused the defendant, substantially prejudiced the defendant's case); *id.* at 361 ("Defendant's admissions during the police interrogation [about his sexual fantasies] were so likely to inflame the jury that we cannot confidently state that defendant received a fair trial.").[9] We conclude that "a reasonable probability exists that but for the deficient conduct[, Fowers] would have obtained a more favorable outcome at trial." *See State v. Munguia*, 2011 UT 5, ¶ 13, 253 P.3d 1082 (internal quotation marks omitted). Accordingly, we reverse and remand for a new trial.

¶ 25 Due to our conclusion that Fowers is entitled to a new trial on the charge involving K.C. and the fact that he cannot be retried on the charge arising from his interaction with T.R., *see State v. Cahoon*, 2009 UT 9, ¶ 16, 203 P.3d 957 (explaining that Utah's double jeopardy statute, Utah Code Ann. § 76–1–403(1)(b)(i), protects a criminal defendant "from subsequent prosecutions for the same criminal act after acquittal"), we need not consider Fowers's claim that the charges were improperly joined for trial.

## CONCLUSION

¶ 26 Defense counsel rendered ineffective assistance of counsel by eliciting testimony about Fowers's twenty-five-year-old conviction of sodomy on a child. The introduction of the evidence concerning the prior conviction, which led to the prosecution's exploration of Fowers's sexual preference, has undermined our confidence in the outcome of this trial because absent this information, there was a reasonable probability of a result

more favorable to Fowers. Therefore, we reverse and remand for a new trial.

¶ 27 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.

well as information presented to the jury about Fowers's past conviction, we conclude that Fowers is entitled to relief. *See also State v. Hildreth*, 2010 UT App 209, ¶¶ 29, 46, 238 P.3d 444 (concluding that although defendant was acquitted on all but two charges, joinder was improper because any probative value of the prior bad acts was substantially more prejudicial than probative).

---

9. Nor are we persuaded by the State's argument that lack of prejudice can be presumed because the jury convicted Fowers only on the charges involving K.C. Due to the prejudicial nature of the evidence about Fowers's sexuality, *see generally State v. Blomquist*, 39 Kan.App.2d 101, 178 P.3d 42, 50 (2008) (recognizing the "prejudicial nature of homosexuality" and concluding that the prosecutor's comments thereon were improper "appeals to passion, prejudice, and fear"), as